**CITADEL INVESTMENT GROUP,**
**L.L.C., et al.**

    **Plaintiffs,**

        **v.**

**CITADEL CAPITAL COMPANY,**

    **Defendant.**

Civil Action No.  09-0886 (JDB)

## MEMORANDUM OPINION

Plaintiffs Citadel Investment Group, L.L.C. ("Citadel Investment") and KCG IP Holdings LLC bring this suit against defendant Citadel Capital S.A.E. ("Citadel Capital"), alleging that, in promoting its business, Citadel Capital misappropriated and infringed plaintiffs' federally-registered trademarks.  Plaintiffs assert five claims against Citadel Capital: trademark infringement under 15 U.S.C. § 1114(1); false designation of origin under 15 U.S.C. § 1125(a); violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125; and both trademark infringement and unfair competition under District of Columbia common law.  Before the Court is Citadel Capital's motion to dismiss for lack of personal jurisdiction and for failure to join an indispensable party.  Upon careful consideration of the parties' memoranda, the applicable law, and the entire record herein, and for the reasons stated below, the Court will deny the motion.

## BACKGROUND

Plaintiff Citadel Investment, a Delaware limited liability company with its principal place of business in Illinois, offers investment management, investment consultation, and brokerage

fund services. Compl. ¶¶ 4, 16. To promote these services, and to "protect its investment in its brand," Compl. ¶ 12, Citadel Investment uses three federally-registered trademarks: (1) the word "Citadel," Compl., Ex. C; (2) the phrase "Citadel Solutions," Compl., Ex. B; and (3) the word "Citadel" coupled with a stylized castle design, Compl., Ex. A.[1] Citadel Investment also owns the domain name <citadelgroup.com>, and operates a website accessible at www.citadelgroup.com. Compl. ¶ 19.

Defendant Citadel Capital is an Egyptian Joint Stock Company with its principal place of business in Cairo, Egypt. Compl. ¶ 6. Since 2004, it has made "private equity investments in the Middle East and North Africa," Compl. ¶ 20, and "is the leading private equity firm in the Middle East and North Africa," Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem.") [Docket Entry 17], Decl. of Hisham el-Khazindar ("el-Khazindar Decl."), ¶ 5 To promote its services, Citadel Capital uses a logo featuring the name "Citadel Capital" and the Arabic word for "citadel" adjacent to a stylized castle design. Compl. ¶ 22. Plaintiffs believe this logo infringes their federally-registered trademarks. Citadel Capital also allegedly is the registrant of the domain name <citadelcapital.com>, and operates a website at www.citadelcapital.com. Compl. ¶ 23.

In March 2008, plaintiffs learned that Citadel Capital "was preparing for an initial public offering . . . that could effect [sic] the U.S. financial services market." Pls.' Opp'n to Def.'s Mot. to Dismiss ("Pls.' Opp'n") [Docket Entry 19], Decl. of Karen Schweickart, ¶ 2. In particular, plaintiffs were worried that if Citadel Capital entered the American financial services market,

---

[1] The three trademarks are registered to KCG IP Holdings, a Delaware limited liability company with its principal place of business in Illinois. Compl. ¶ 5. KCG IP Holdings licenses the trademarks to Citadel Investment. Compl. ¶ 13.

Citadel Capital's use of the "Citadel" name could confuse consumers.  See id.  Therefore, plaintiffs advised Citadel Capital that they "held superior intellectual property rights in the United States in the 'Citadel' trademarks," and that Citadel Capital could not use its name and logo in U.S. markets.  Id.  For its part, Citadel Capital "did not believe that [its] . . . use of the 'Citadel Capital' name or plans to pursue an [initial public offering] would cause confusion with" plaintiffs' trademarks.  Id. at ¶ 3.  Plaintiffs nonetheless indicated that they "would not agree to Citadel Capital's use of their name and logo in the United States."  Pls.' Opp'n, Decl. of Adam Cooper, ¶ 4.

Thereafter, Citadel Capital filed a trademark application with the United States Patent and Trademark Office, seeking to register the company's logo.  See Pls.' Opp'n, Decl. of Adam Levetown ("Levetown Decl."), Ex. O (Citadel Capital's trademark application).  The Patent and Trademark Office refused Citadel Capital's application, concluding that Citadel Capital's proposed trademark was "similar" to plaintiffs' previously-registered trademarks and therefore "there is a likelihood of confusion as to the source of applicant's services."  Levetown Decl., Ex. P (rejection of Citadel Capital's trademark application), 4.

Even though Citadel Capital did not obtain a trademark for its logo, plaintiffs allege that it nevertheless has attempted "entry into the United States market for investment services" through "its attendance at and sponsorship of industry conferences in the investment services field."  Compl. ¶ 3; see also Levetown Decl. at ¶ 8.  Of particular relevance to plaintiffs' claims here, Citadel Capital served as a "lead sponsor" and a "reception sponsor" of the Global Private Equity Conference held in Washington, D.C. in May 2009."  Compl. ¶ 3; see also Levetown

Decl. at ¶ 8.[2]  In its role as a "reception sponsor" of the event, Citadel Capital hosted a cocktail

reception for Conference attendees.  See id.  During the reception, Citadel Capital's chairman

"gave a speech to the cocktail party attendees where he described defendant Citadel Capital's

investment strategy and projects."  Id. at ¶ 15.  The chairman also participated in a panel

discussion at the conference.  See id. at ¶ 11.  Approximately 700 individuals and corporations

attended the Global Private Equity Conference, many of which had offices in the District of

Columbia or else were "otherwise affiliated with the District."  Levetown Decl. at ¶ 9.

　　　　Throughout the Conference, Citadel Capital's employees handed out business cards and

other promotional material bearing Citadel Capital's name and logo.  See id. at ¶¶ 9-10, 17.  The

company also deployed several placards bearing the company's name and logo at its conference

booth and during the cocktail reception.  See id. at ¶ 9.  And Citadel Capital "maintain[ed] a

computer at its Conference booth displaying its website www.citadelcapital.com and promoting

[its] private equity investment services."  Pls.' Opp'n at 7; see also Levetown Decl. at ¶ 9.

　　　　Plaintiffs concluded that Citadel Capital's use of its logo to promote its private equity

services in the United States infringed plaintiffs' trademarks, and therefore filed this action.

Plaintiffs assert four claims against Citadel Capital related to its use of its company logo:

trademark infringement under 15 U.S.C. § 1114(1); false designation of origin under 15 U.S.C. §

1125(a); and both trademark infringement and unfair competition under District of Columbia

common law.  They seek monetary damages for these claims, and a permanent injunction

restraining Citadel Capital from using any logo that is similar to plaintiffs' trademarks.

---

[2] Citadel Capital also participated in the Emerging Markets Private Equity Forum in New York City in March 2009.  Compl. ¶ 26.  Citadel Capital was a "lead sponsor" of the event, Compl. ¶ 26, and its managing director was a featured speaker at the forum, Compl. ¶ 27.

Additionally, plaintiffs assert that Citadel Capital is liable for cybersquatting based on its use of a domain name that plaintiffs believe is confusingly similar to plaintiffs' own domain name. For this claim, they seek both monetary damages and an order transferring Citadel Capital's domain name to plaintiffs. Citadel Capital has moved to dismiss plaintiffs' claims for lack of personal jurisdiction and for failure to join an indispensable party.

## ANALYSIS

### I. Federal Rule of Civil Procedure 12(b)(2): Personal Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(2), a plaintiff bears the burden of establishing a court's personal jurisdiction over a defendant. Where, as here, there has been no jurisdictional discovery, a plaintiff need only make a prima facie showing of the pertinent jurisdictional facts in order to meet that burden. See Mwani v. bin Laden, 417 F.3d 1, 8 (D.C. Cir. 2005); see also Brunson v. Kalil & Co., Inc., 404 F. Supp. 2d 221, 226 (D.D.C. 2005). "Moreover, to establish a prima facie case, plaintiffs are not limited to evidence that meets the standards of admissibility required by the district court. Rather, they may rest their argument on their pleadings, bolstered by such affidavits and other written materials as they can otherwise obtain." Mwani, 417 F.3d at 8. Nevertheless, a plaintiff must allege "specific facts upon which personal jurisdiction may be based," Blumenthal v. Drudge, 992 F. Supp. 44, 53 (D.D.C. 1998), and it cannot rely on conclusory allegations, see Elemary v. Philipp Holzmann A.G., 533 F. Supp. 2d 116, 121 (D.D.C. 2008).

The Court may exercise personal jurisdiction over a non-resident defendant either by finding general jurisdiction over the party, or by finding specific jurisdiction based on "acts of a defendant that touch and concern the forum." Steinberg v. Int'l Criminal Police Org., 672 F.2d

927, 928 (D.C. Cir. 1981); <u>accord</u> <u>Kopff v. Battaglia</u>, 425 F. Supp. 2d 76, 81 (D.D.C. 2006).

Here, plaintiffs contend only that this Court has specific jurisdiction over Citadel Capital.

To establish specific jurisdiction over a non-resident defendant in a federal question case such as this, plaintiffs must plead facts that (1) bring the case within the scope of the District of Columbia's long-arm statute, D.C. Code § 13-423, and (2) satisfy the constitutional requirements of due process. <u>See</u> GTE New Media Servs. Inc. v. Bell South Corp., 199 F.3d 1343,1347 (D.C. Cir. 2000); <u>United States v. Ferrara</u>, 54 F.3d 825, 828 (D.C. Cir. 1995). The District's long-arm statute states that courts may exercise jurisdiction over any person who, acting directly or through an agent, engages in the following conduct:

(1)     transacts any business in the District of Columbia;

(2)     contracts to supply services in the District of Columbia;

(3)     causes tortious injury in the District of Columbia by an act or omission in the District of Columbia; or

(4)     causes tortious injury in the District of Columbia by an act or omission outside the District of Columbia if the person "regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia."

D.C. Code § 13-423(a)(1)-(4). A claim for relief under any of these provisions must "aris[e] from" the acts conferring jurisdiction over the defendant. <u>See</u> D.C. Code. § 13-423(b); <u>Jackson v. Loews Wash. Cinemas, Inc.</u>, 944 A.2d 1088, 1092 (D.C. 2008). Here, plaintiffs contend that this Court may exercise jurisdiction over Citadel Capital based either on section 13-423(a)(1) or on section 13-423(a)(3). Neither provision, however, confers jurisdiction over Citadel Capital.

A.     <u>Personal Jurisdiction Under Section 13-423(a)(1)</u>

The District of Columbia Court of Appeals has interpreted section 13-423(a)(1) "'to

permit[] the exercise of personal jurisdiction over nonresident defendants to the extent permitted by the due process clause of the United States Constitution'" where a claim for relief arises out of business a defendant transacts in the District of Columbia. Jackson, 944 A.2d at 1092-93 (quoting Envtl. Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc., 355 A.2d 808, 810-11 (D.C. 1976) (en banc)); see also Helmer v. Doletskaya, 393 F.3d 201, 205 (D.C. Cir. 2004). "[T]he statutory and constitutional jurisdictional questions, which are usually distinct, [therefore] merge into a single inquiry." Ferrara, 54 F.3d at 828. Hence, the only question the Court must answer here is whether Citadel Capital "purposefully established 'minimum contacts with [the District of Columbia] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Helmer, 393 F.3d at 205 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)) (alteration in original). "[I]t is essential . . . that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958); see also World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) ("[T]he defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there.").

According to plaintiffs, Citadel Capital's relevant contact with the District of Columbia was its attendance at the Global Private Equity Conference. They contend that Citadel Capital purposefully "traveled to Washington, D.C., to promote its services at a major industry conference and to reap the benefits of its roles as 'Lead Sponsor' and 'Reception Sponsor.'" Pls.' Opp'n at 17. In doing so, plaintiffs opine that "Defendant clearly sought to take advantage of, and benefit from, the District's unique businesses, location, demographics and reputation." Id.

Accordingly, in plaintiffs' view, "it is only reasonable for Defendant to anticipate being haled into court here in this District for its infringement of Plaintiffs' trademarks and unlawful use of the <citadelcapital.com> domain name." Id.[3]

Plaintiffs' allegations do not establish a prima facie case that Citadel Capital "purposefully avail[ed] itself of the privilege of conducting activities within the [District of Columbia]." Hanson, 357 U.S. at 253. Plaintiffs are no doubt correct that Citadel Capital made the voluntary decision to travel to the Global Private Equity Conference in the District of Columbia and to serve as a "lead sponsor" and "reception sponsor" of the event. But attendance at and sponsorship of a trade show is not, without more, sufficient to confer jurisdiction over a non-resident defendant. See C.S.B. Commodities, Inc. v. Urban Trend (HK) Ltd., 626 F. Supp. 2d 837, 853 (N.D. Ill. 2009); Berthold Types Ltd. v. European Mikrograf Corp., 102 F. Supp. 2d 928, 934 (N.D. Ill. 2000); Fluid Mgmt. Ltd. P'Ship v. H.E.R.O. Indus., Ltd., No. 95 C 5604, 1997 WL 112839, at *6 (N.D. Ill. Mar. 11, 1997). See generally Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (defendant must have "meaningful 'contacts, ties, or relations,'" with the forum (quoting Int'l Shoe, 326 U.S. at 319)). Rather, a plaintiff must also allege that "the trade show was directed specifically at" District of Columbia residents. C.S.B. Commodities, 626 F. Supp. 2d at 855. This is so because where a trade show takes place will be, in many cases, fortuitous. See id. at 853 (recognizing that trade shows are often unconnected to the forum). And fortuitous contacts cannot give rise to personal jurisdiction. See Burger King Corp., 471 U.S. at 475 (1985) ("Th[e] 'purposeful availment' requirement ensures that a defendant will not

_____

[3] Citadel Capital does not dispute that the "transacting business" provision of the long-arm statute encompasses the type of activity it engaged in at the Global Private Equity Conference.

be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts.").[4]

Here, plaintiffs do not allege that the Global Private Equity Conference was directed specifically at District of Columbia residents. Nor, it seems, could they: the Conference was "international in scope with an international panel of participants and audience." El-Khazindar Decl. at ¶ 12; see also Compl., Ex. G (promotion materials for 2009 Global Private Equity Conference) ("During the industry's largest and most comprehensive conference, we will be examining emerging market opportunities in an increasingly competitive and volatile global environment and identifying which markets present the best opportunities and how investors can effectively navigate uncertain times."). And neither party suggests that the Conference had to take place in Washington, D.C., or that the event's agenda was uniquely formulated for the District of Columbia market. There is simply no evidence in the record that the Conference met in the District of Columbia specifically to take advantage of the benefits of the forum -- an absence, the Court notes, that is unsurprising in light of the fact that Citadel Capital participated in the similar Emerging Markets Private Equity Forum in New York City just two months earlier.

Plaintiffs assert, however, that even if the Conference was not directed at the District of Columbia, Citadel Capital itself attended the Conference to promote its firm and its services directly to residents of the District of Columbia. See Pls.' Opp'n at 15 (Citadel Capital's activities at the Conference were "integral parts of Defendant's overall effort to promote its firm and its services to residents of the District of Columbia"). But plaintiffs have marshaled no evidence to

_____

[4] For this reason, plaintiffs' repeated allegation that personal jurisdiction is appropriate simply because Citadel Capital served as both a "lead sponsor" and a "reception sponsor" of the Global Private Equity Conference is without merit. Although these roles may indicate that Citadel Capital played an important part in the Conference, they say nothing about Citadel Capital's relationship to the District of Columbia.

support this conclusory assertion. And the allegations in their complaint suggest only that

Citadel Capital was seeking to solicit investors generally, not those specifically in the District.

Compl. ¶ 35 ("On information and belief, the primary purpose of Citadel Capital's and its

officers' attendance at and participation in the . . . Conference is to solicit investors to invest

capital in Citadel Capital's private equity investments."). Plaintiffs' unsubstantiated statement in

their opposition papers regarding Citadel Capital's intentions at the Conference cannot carry their

burden of establishing a <u>prima facie</u> case of personal jurisdiction. <u>See</u> <u>Elemary</u>, 533 F. Supp. 2d

at 121.

Nor can plaintiffs carry their evidentiary burden by suggesting that because "more than

200 conference attendees have offices in the District of Columbia or are otherwise affiliated with

the District," Citadel Capital must have been targeting District residents. Pls.' Opp'n at 17. That

a large number of the Conference's attendees may have been affiliated with the District does not

demonstrate that the Conference, or Citadel Capital through its participation in the Conference,

targeted District of Columbia residents. A conference is always likely to draw a large number of

its attendees from areas geographically proximate to the event's location. If this fact were

sufficient to demonstrate that a defendant purposefully availed itself of the privileges of doing

business in the event's forum, then attendance could always subject an out-of-state attendee to

personal jurisdiction in the state where the event was held. Such an outcome is foreclosed by due

process, <u>see</u> <u>Burger King Corp.</u>, 471 U.S. at 475, and is inconsistent with a line of trade-show

cases focusing on the nature and quality of a defendant's contacts with a forum state, <u>see, e.g.</u>,

<u>C.S.B. Commodities</u>, 626 F. Supp. at 855; <u>Berthold Types Ltd.</u>, 102 F. Supp. at 934.

Moreover, the mere fact that District of Columbia residents were at the Conference does

not mean that Citadel Capital's business promotions were directed at the District. Citadel

Capital's activities at the Global Private Equity Conference were akin to a national advertising

campaign -- it sought to generate publicity broadly, without regard to the domicile of the

consumer. And although advertising may reach a "forum generally, [it] does not, without more,

provide a sufficient basis for exercising specific jurisdiction over a foreign defendant." Miller

Yacht Sales, Inc. v. Smith, 384 F.3d 93, 105 (3d Cir. 2004); accord Quick Techs., Inc. v. Sage

Group PLC, 313 F.3d 338, 345 (5th Cir. 2002); Federated Rural Elec. Ins. Corp. v. Kootenai

Elec. Coop., 17 F.3d 1302, 1305 (10th Cir. 1994). Plaintiffs offer no specific facts demonstrating

that Citadel Capital purposefully sought to target District residents in particular, as opposed to

Conference attendees generally, with their solicitations. On the basis of the current record, then,

the Court cannot conclude that the Global Private Equity Conference was directed at District of

Columbia residents or that Citadel Capital attended the Conference in order to target District

residents.[5]

Plaintiffs can also establish that Citadel Capital purposefully directed its activities at the

District of Columbia by demonstrating that Citadel Capital made "sales to [District] residents . . .

either during or as a result of the trade show." C.S.B. Commodities, 626 F. Supp. 2d at 855.

Plaintiffs, however, have not offered any evidence indicating that Citadel Capital's participation

in the Global Private Equity Conference resulted in sales of its private equity services. To be

---

[5] In a footnote, plaintiffs suggest that Citadel Capital may also be amenable to personal jurisdiction under section 13-423(a)(2) of the District of Columbia long-arm statute. They submit that Citadel Capital, in its role as "reception sponsor," "presumably entered into contracts with the conference organizers . . . and other vendors whereby Defendant 'contracted to supply services' in the District." Pls.' Opp'n at 17 n.22 (quoting D.C. Code § 13-423(a)(2)). This may be so, but plaintiffs' intellectual property claims do not arise from these contacts, which are therefore irrelevant to the Court's jurisdictional analysis.

sure, plaintiffs do recount that they learned that the Inter-American Development Bank, which was founded and is headquartered in the District of Columbia, "was talking to defendant Citadel Capital about providing . . . funding for projects in Latin America." Levetown Decl. at ¶ 16. But plaintiffs recite no evidence showing that this relationship developed either at, or as a result of, the Global Private Equity Conference.[6] Without such evidence, plaintiffs have not established a prima facie showing of personal jurisdiction. See C.S.B. Commodities, 626 F. Supp. at 855.

In short, plaintiffs have not demonstrated that the Global Private Equity Conference, or Citadel Capital through its participation in the Conference, specifically targeted District of Columbia residents. Nor have they shown that Citadel Capital sold its investment services to District residents at, or as a result of, the Conference. Accordingly, the Court cannot exercise personal jurisdiction pursuant to section 13-423(a)(1).

B.      Personal Jurisdiction Under Section 13-423(a)(3)

Personal jurisdiction under section 13-423(a)(3) is appropriate where a defendant "causes tortious injury in the District of Columbia by an act or omission in the District of Columbia." See Helmer, 393 F.3d at 208 ("This provision is a precise and intentionally restricted tort section which stops short of the outer limits of due process, and requires that both act and injury occur in the District of Columbia." (internal quotation marks omitted)). Plaintiffs contend that jurisdiction lies under this provision because "[t]he facts of record show that Defendant

---

[6] Although Citadel Capital's relationship with the Inter-American Development Bank might be itself sufficient to establish jurisdiction under D.C. Code section 13-423(a)(1), see Schwartz v. CDI Japan, Ltd., 938 F. Supp. 1, 6 (D.D.C. 1996), plaintiffs do not advance this argument as a basis for jurisdiction. Nor do they offer any facts about the nature and quality of the relationship beyond observing that it may exist. Absent further development, plaintiffs have not satisfied their burden of alleging specific facts on which jurisdiction may be based. See Blumenthal, 992 F. Supp. at 53.

committed intentional torts in the District of Columbia by using the infringing 'Citadel Capital' name and logo . . . to advertise and promote Defendant's private equity investment services." Pls.' Opp'n at 11.

The Court is not persuaded, however, because plaintiffs cannot demonstrate that their injuries arose in the District of Columbia. Courts have taken several different approaches in positioning where a plaintiff's injury occurs in cases of trademark infringement and unfair competition. Some courts assert that "in cases of trade-mark infringement and unfair competition, the wrong takes place . . . where the passing off occurs, i.e., where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's." Vanity Fair Mills, Inc. v. T. Eaton Co., 234 F.2d 633, 639 (2d Cir. 1956); accord Amba Mktg. Sys., Inc. v. Jobar Int'l Inc., 551 F.2d 784, 787-88 (9th Cir. 1977) (personal jurisdiction in unfair competition and trademark actions based on where infringing products were sold; injury to good will or reputation, or dilution of the value of the trademark, does not establish personal jurisdiction in the forum state); Berthold Types Ltd., 102 F. Supp. 2d at 932 ("intellectual property infringement takes place in the state of the infringing sales, rather than the state of the trademark owner's domicile"). Here, however, the Court has already determined that plaintiffs have not alleged that Citadel Capital sold its services at the Global Private Equity Conference or as a result of the Conference. Absent such an allegation, plaintiffs have not asserted an injury in the District of Columbia under this theory.

Other courts conclude that the place of injury in a trademark case is the forum where a plaintiff "mainly" uses the trademarks at issue -- defined alternatively as the place where the plaintiff does the majority of its business or the state where the plaintiff's primary office is

located.  See Bird v. Parsons, 289 F.3d 865, 876 (6th Cir. 2002); Panavision Int'l, L.P. v.

Toeppen, 141 F.3d 1316, 1321-22 (9th Cir. 1998); Indianapolis Colts, Inc. v. Metro. Baltimore

Football Club Ltd. P'ship, 34 F.3d 410, 411-12 (7th Cir. 1994); McGraw-Hill Cos., Inc. v.

Ingenium Techs. Co., 375 F. Supp. 2d 252, 256 (S.D.N.Y. 2005); Zippo Mfg. Co. v. Zippo Dot

Com, Inc., 952 F. Supp 1119, 1127 (W.D. Pa. 1997); cf. Hot Wax, Inc. v. Stone Soap Co. Inc.,

No 97 C 6878, 1999 WL 183776, at *5 (N.D. Ill. Mar. 25, 1999) ("In intellectual property law

cases, like those brought under the Lanham Act, a corporation's location of injury[] is its place of

business.").  Plaintiffs, however, offer no evidence indicating that they do a substantial part of

their business in the District of Columbia.  In fact, they do not allege that they do any business in

the District.  And both plaintiffs have their principal place of business in Illinois.  Hence, the

Court cannot conclude that plaintiffs suffered any injury in the District under the second

approach to injury in trademark infringement cases.[7]

Although in cases where there is no allegation of sales of infringing products, as here, the

second theory likely offers the better method for determining where injury occurs in a trademark

case, the Court need not choose among the competing lines of cases.  Under either approach,

---

[7] Plaintiffs posit that there is another approach: "'the wrong takes place where confusion
is likely to occur.'"  Pls.' Opp'n at 11 (quoting Heroes, Inc. v. Heroes Found., 958 F. Supp. 1, 5
(D.D.C. 1996)).  They conclude based on that theory that they suffered injury in the District of
Columbia because consumers would have been confused in that forum.  See id. at 11-12.  To the
extent that Heroes positions injury in the location in which a potential consumer may become
confused, however, the Court finds it unpersuasive.  Such an approach, stated in dictum, is
inconsistent with the established methods for determining where injury occurs in trademark
infringement cases, and is unsupported in the case law.  See, e.g., Bird, 298 F.3d at 876 (injury
occurs either in place where plaintiff does business or in forum where its primary office is
located); Amba Mktg. Sys., Inc., 551 F.2d at 787-88 (personal jurisdiction where infringing
products were sold).  Indeed, no case that cites Heroes adopts its approach, and the Court has
found no other authority supporting its approach.

plaintiffs cannot assert that any injury occurred in the District of Columbia, and therefore they cannot demonstrate that personal jurisdiction is proper under section 13-423(a)(3).

C.     Personal Jurisdiction Under Fed. R. Civ. P. 4(k)(2)

As a fallback position, plaintiffs contend that even if this Court cannot exercise jurisdiction over Citadel Capital pursuant to the District of Columbia's long-arm statute, it can do so pursuant to Federal Rule of Civil Procedure 4(k)(2).  See Pls.' Opp'n at 19-20.  That Rule "permits a federal court to exercise personal jurisdiction over a defendant (1) for a claim arising under federal law, (2) where a summons has been served, (3) if the defendant is not subject to the jurisdiction of any single state court, (4) provided that the exercise of federal jurisdiction is consistent with the Constitution (and laws) of the United States."  Mwani, 417 F.3d at 10.

Here, plaintiffs have plainly met the first three requirements of Rule 4(k)(2).  Plaintiffs' claims for trademark infringement, false designation of origin, and cybersquatting arise under federal law.  They properly served the summons and complaint on the managing director of Citadel Capital.  See el-Khazindar Decl. at ¶ 14.  And Citadel Capital is not subject to personal jurisdiction in the District of Columbia, as this Court has determined above, and it "refuses to identify any other [forum] where suit is possible.'"  Mwani, 417 F.3d at 11 (quoting ISI Int'l, Inc. v. Borden Ladner Gervais, LLP, 256 F.3d 548, 552 (7th Cir. 2001)).  Therefore, the Court turns to the final element of the Rule 4(k)(2) analysis.

"Whether the exercise of jurisdiction is 'consistent with the Constitution' for purposes of Rule 4(k)(2) depends on whether a defendant has sufficient contacts with the United States as a whole to justify the exercise of personal jurisdiction under the Due Process Clause of the Fifth Amendment."  Id. (citing Fed. R. Civ. P. 4(k) 1993 amendment advisory committee's note).

Therefore, the Court must determine whether the "defendant has 'purposefully directed his activities at residents of the [United States]," Burger King, 471 U.S. at 472 (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)), and whether "the litigation results from alleged injuries that 'arise out of or relate to' those activities," id. (quoting Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414 (1984)).

Here, it is undisputed that Citadel Capital sought business relationships with residents of the United States. Indeed, that was the obvious purpose of its activities at both the Washington, D.C., industry conference and the earlier New York City conference. While at the Global Private Equity Conference, Citadel Capital's managing director admitted "that defendant Citadel Capital did actively solicit wealthy investors in the United States to invest with defendant Citadel Capital." Levetown Decl. at ¶ 18. Plaintiffs recount that Citadel Capital's communications director echoed this strategy: "I asked [Citadel Capital's communications director] if defendant Citadel Capital was soliciting business in the United States and she responded 'yeah we do, Stephen Murphy has done a lot of mileage in the U.S.'" Id. at ¶ 17.[8] By these admissions, Citadel Capital has demonstrated that it has purposefully sought "meaningful 'contacts, ties, or relations,'" with the United States by seeking investors in the United States. Burger King, 471

---

[8] Although the record does not indicate whether these solicitations occurred at the Global Private Equity Conference, their timing and location is of no moment -- for purposes of Rule 4(k)(2), the Court need not confine its analysis of Citadel Capital's contacts with the United States to those that resulted from the Conference. Because plaintiffs allege that Citadel Capital impermissibly used plaintiffs' trademarks to promote its private equity business in the United States, the Court may consider all activities during which Citadel Capital purportedly used the infringing marks. See Mwani, 427 F.3d at 12.

U.S. at 472 (quoting <u>Int'l Shoe</u>, 326 U.S. at 319).[9]  Attempting to increase its presence in United

States financial markets, Citadel Capital deliberately engaged in activities in the United States

with the intent of creating continuing obligations between itself and residents of the United

States.  <u>See</u> <u>Keeton</u>, 465 U.S. at 781; <u>Travelers Health Ass'n v. Virginia</u>, 339 U.S. 643, 648

(1950).  And by seeking these relationships, Citadel Capital "had 'fair warning' that [its] activities

would 'subject [it] to the jurisdiction' of the United States."  <u>Mwani</u>, 417 F.3d at 13 (quoting

<u>Burger King</u>, 471 U.S. at 472).  Such contacts therefore are sufficient to give rise to jurisdiction

under Rule 4(k)(2).

 The Court's conclusion that Citadel Capital's solicitation of business in the United States

confers jurisdiction under Rule 4(k)(2) comports with the Federal Circuit's recent decision in

<u>Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de Equip. Medico</u>, 563 F.3d 1285 (Fed. Cir.

2009).  There, the Federal Circuit concluded that jurisdiction under Rule 4(k)(2) was proper

where a defendant had purposefully directed its activities to the United States by traveling to a

trade show in the United States and subsequently displaying products that allegedly violated

another company's patents.  <u>See</u> <u>Synthes</u>, 563 F.3d at 1298.  Notably, the Court reached this

conclusion even though the defendant did not purposefully direct sales efforts at residents of the

United States.  <u>See id.</u>  Here, Citadel Capital's relationship with the United States is much greater

than the defendant's relationship with the United States in <u>Synthes</u>.  Citadel Capital not only

---

[9] Indeed, Citadel Capital seemingly has developed a nascent business relationship with the Inter-American Development Bank.  <u>See</u> Levetown Decl. at ¶ 16 ("I asked Mr. Molina if the [Bank] had a business relationship with defendant Citadel Capital, and he responded by telling me that the [Bank] was talking to defendant Citadel Capital about providing . . . funding for projects in Latin America.").  Although the Court is unwilling to rest jurisdiction in the District of Columbia on this single fact given the absence of any specifics about the relationship, it nevertheless is evidence that Citadel Capital is soliciting investors in the United States.

purposefully traveled to the United States and displayed its infringing logo, but it has admitted that it is actively soliciting business relationships with residents of the United States.

Nevertheless, even after "it has been decided that a defendant purposefully established minimum contacts within the forum . . ., these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" Burger King, 471 U.S. at 476 (quoting International Shoe, 326 U.S. at 320)). But "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Id. at 477. Although Citadel Capital argues that two factors render inappropriate the exercise of personal jurisdiction, neither is persuasive.

Citadel Capital first contends that it should not be haled into court merely because of its activities at a single international conference. See Def.'s Reply in Supp. of Mot. to Dismiss ("Def.'s Reply") [Docket Entry 22], at 15. But that is not the case here -- the Court has not based jurisdiction solely on Citadel Capital's activities at the Global Private Equity Conference. Rather, jurisdiction is appropriate because Citadel Capital has demonstrated -- indeed admitted -- an intent to do business in the United States. Certainly, where a company seeks entry into American markets it "purposefully avails itself of the privilege of conducting activities" within the United States. Burger King, 471 U.S. at 475.

Citadel Capital also asserts that international comity requires this Court to respect its "valid rights to its name and mark" in Egypt by declining to exercise jurisdiction over this case. See Def.'s Reply at 9. Not so. The Court's decision that it has personal jurisdiction over Citadel

Capital confirms only that the Court has power to render a decision against Citadel Capital. See

Burger King, 471 U.S. at 472 (due process "protects an individual's liberty interest in not being

subject to the binding judgments of a forum state with which he has established no meaningful

'contacts, ties, or relations.'" (quoting Int'l Shoe, 326 U.S. at 319)). It is not a decision on the

merits, and therefore does not burden Citadel Capital's valid Egyptian trademark in any way.

Citadel Capital's Egyptian trademark may affect the relief plaintiffs would be entitled to if they

were to prevail on their claims. See Sterling Drug, Inc. v. Bayer AG, 14 F.3d 733, 750 (2d Cir.

1994) ("But because Bayer AG is a German corporation with a valid trademark in the 'Bayer'

mark under German law, its legitimate interests in normal corporate activities such as raising

capital and communicating with subsidiaries deserve some accommodation in the United

States."). But that trademark does not limit this Court's power to hear plaintiffs' claims against

Citadel Capital in the first instance.

The Court concludes, then, that Citadel Capital's activities were purposefully directed at

residents of the United States. Because there is a "constitutionally sufficient relationship"

between Citadel Capital and the United States, see Omni Capital Int'l, Ltd. v. Rudolph Wolff &

Co., 484 U.S. 97, 104 (1987), the Court can exercise personal jurisdiction over Citadel Capital

pursuant to Rule 4(k)(2).[10]

---

[10] In its opening brief, Citadel Capital also suggests that the Court cannot exercise jurisdiction over plaintiffs' cybersquatting claim "since none of the alleged activities that constitute cybersquatting took place in the District." Def.'s Mem. at 17. The Court's exercise of jurisdiction pursuant to Rule 4(k)(2) renders this argument moot. Under the Anticybersquatting Consumer Protection Act, an individual may not, among other things, use an infringing domain name. See 15 U.S.C. § 1125(d)(1)(A). Because Citadel Capital used its website to promote its business to United States residents, the cybersquatting claim arises out of Citadel Capital's contacts with the United States.

## II.     Federal Rule of Civil Procedure 12(b)(7): Failure to Join an Indispensable Party

Citadel Capital argues that even if the Court does not dismiss this action for lack of personal jurisdiction, it should nevertheless dismiss the cybersquatting claim for failure to name an indispensable party under Rule 19 of the Federal Rules of Civil Procedure.  Where a party seeks dismissal for failure to name an indispensable party, the burden is on the moving party to show "the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence."  Citizen Band Potawatomi Indian Tribe of Okla. v. Collier, 17 F.3d 1292, 1293 (10th Cir. 1994).  "The proponent's burden can be satisfied by providing affidavits of persons having knowledge of these interests as well as other relevant extra-pleading evidence."  Id. (internal quotation marks omitted).  See generally 5C Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1359 (3d ed. 2004).

Here, Citadel Capital asserts that Ahmed El Houssieny is the personal registrant of the <citadelcapital.com> domain name, and therefore is "an indispensable party to the action"  Def.'s Mem. at 17.  This is incorrect.  Under the Anticybersquatting Consumer Protection Act, an individual may not register, traffic in, or use a domain name where he has a "bad faith intent to profit from that mark."  15 U.S.C. § 1125(d)(1)(A).  The Act creates a cause of action against both "the domain name registrant [and] that registrant's authorized licensee."  Id. § 1125(d)(1)(D).  Here, Citadel Capital admits that it uses the <citadelcapital.com> domain name as El Houssieny's licensee: "On January 28, 2006, Ahmed El Houssieny, a managing director of Citadel Capital, purchased the domain name citadelcapital.com, and has since allowed Citadel Capital to use the website at that address to provide information about its regional private equity investment activities."  El-Khazindar Decl. at ¶ 15.  Hence, under the Act, plaintiffs have an

independent claim against Citadel Capital based on Citadel Capital's use of the <citadelcapital.com> domain name that does not depend on El Houssieny's participation in the litigation.

To be sure, Citadel Capital contends that plaintiffs do not merely assert their cybersquatting claim against Citadel Capital, but also, by asking the Court to transfer the <citadelcapital.com> domain name "from the current registrar of record to a registrar of Plaintiff's selection," Compl., Prayer ¶ K, they assert their claim against the domain name registrant as well. See Def.'s Mem. at 18. Because, in Citadel Capital's view, El Houssieny is the actual registrant, it asserts that the Court cannot transfer the domain name without El Houssieny in the litigation "since parties who are actual owners of property are indispensable parties in an action affecting that property." Id. See generally Williams v. Bankhead, 86 U.S. 563, 570-71 (1873) (property owner an indispensable party in action determining property's ownership); Kremen v. Cohen, 337 F.3d 1024, 1029 (9th Cir. 2003) (domain name registration a property interest). According to Citadel Capital, however, this Court has no jurisdiction over El Houssieny, see Def.'s Mem. at 19, and therefore it must dismiss the cybersquatting claim.

The Court does not agree. Even if El Houssieny is the actual registrant of the <citadelcapital.com> domain name,[11] the claim may proceed. Under Rule 19, "[i]f a person who

---

[11] The parties have submitted conflicting evidence concerning whether El Houssieny or Citadel Capital is the actual registrant of the domain name at issue. Plaintiffs submit a printed copy of the publicly available Network Solutions WHOIS record from May 11, 2009, which identifies the registrant of the domain name as Ahmed El Houssieny on behalf of Citadel Capital. Compl., Exhibit D. Citadel Capital also submits a printed copy of the WHOIS record, apparently from after May 11, 2009, which identifies the registrant as Ahmed El Houssieny personally Each record provides a different address for the registrant, despite the fact that El Houssieny is named in both documents. The Court need not resolve this dispute here, however, because even if the Court assumes El Houssieny is the registrant of the domain name, he is not an indispensable

is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). Pursuant to this standard, where an "adequate remedy, even if not complete, can be awarded without the absent party, the suit may go forward." Makah Indian Tribe v. Verity, 910 F.2d 555, 560 (9th Cir. 1990); see also Fed. R. Civ. P. 19(b)(3); Wichita and Affiliated Tribes of Okla. v. Hodel, 788 F.2d 765, 777 (D.C. Cir. 1986). Here, the Court has already determined that plaintiffs can bring a cybersquatting claim against Citadel Capital for its use of the <citadelcapital.com> domain name. If plaintiffs prevail on this claim, they potentially can obtain both monetary and injunctive relief against Citadel Capital, which would compensate plaintiffs for Citadel Capital's use of the infringing domain name and terminate Citadel Capital's future use of the domain name. Because this remedy would adequately address Citadel Capital's infringing use, and would have no effect on El Houssieny's rights to the domain name, the Court concludes that Citadel Capital has not carried its burden of demonstrating that dismissal of the cybersquatting claim is appropriate under Rule 19.

## CONCLUSION

For the foregoing reasons, the Court will deny defendant's motion to dismiss for lack of personal jurisdiction and for failure to join an indispensable party. A separate Order accompanies this Memorandum Opinion.

/s/
_____
JOHN D. BATES
United States District Judge

Date: March 31, 2010
_____

party to this action under Rule 19.